**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOYCE GREEN, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No. 12-cv-8079 |
| vs. | ) ) | The Honorable Joan B. Gottschall |
| U.S. CASH ADVANCE ILLINOIS, LLC, d/b/a THE LOAN MACHINE, and TITLE LOAN COMPANY d/b/a THE LOAN MACHINE, | ) ) ) ) | Jury Demanded |
| Defendants. | ) ) | |

## FIRST AMENDED COMPLAINT

NOW COMES Plaintiff Joyce Green, on behalf of herself and all others similarly situated, and complaining of Defendants U.S. Cash Advance Illinois, LLC and Title Loan Company (collectively referred to as the singular "The Loan Machine"), states as follows:

### Introduction

1.      Defendants have engaged in the practice of extending credit to consumers in Illinois and Missouri on unconscionable, fraudulent, deceptive, and usurious terms.

2.      Defendants extended Plaintiff Joyce Green, a senior citizen living on social security income, a loan of $1,650 on May 8, 2012 pursuant to a Line of Credit Account Agreement ("Agreement") that falsely states in section 4, in boldface, that plaintiff would be charged an Annual Percentage Rate (APR) of only 36 percent.

3.      In reality, due to certain purported "account maintenance fees" not factored into the stated interest rate, defendants intended to charge and did charge plaintiff an APR in excess of 200% – a rate that is unconscionable in itself and that violates the interest rate ceiling on such loans under the Illinois Consumer Installment Loan Act (CILA), 205 ILCS670/1 *et seq.*

1

4.      For the first two pay periods on her loan, Defendants failed to provide Ms. Green a monthly billing statement of any kind.

5.      Finally, after Ms. Green requested a bill, Defendants provided her one, but still failed to make the proper disclosures required on such monthly billing statements by the federal Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*

6.      After making three payments totaling almost $1,000, Ms. Green's principal balance has only been reduced from $1,650 to $1,517.

7.      Ms. Green brings this action to redress the harm these omissions and deceptive practices have caused her and other customers of these defendants.

8.      Ms. Green brings this action pursuant to the TILA, 15 U.S.C. § 1640, CILA, 205 ILCS 670/20.7, the Illinois Payday Loan Reform Act (PLRA), 815 ILCS 122/4-10(b), and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10a.

**I.      Parties**

9.      Joyce Green is a resident of Chicago, Illinois.

10.     Defendant U.S. Cash Advance Illinois is a limited liability corporation organized under the laws of Missouri doing business under the assumed name "The Loan Machine," and a licensed lender under CILA.

11.     Defendant Title Loan Company is a corporation organized under the laws of Missouri doing business under the assumed name "The Loan Machine," and a licensed lender under CILA.

12.     As described below, Defendants U.S. Cash Advance Illinois and Title Loan company both do business as the Loan Machine, and often fail to distinguish between themselves when doing business with consumers.

2

**II.      Jurisdiction**

13.      Plaintiff invokes the jurisdiction of this Court pursuant to 15 U.S.C. §1640(e) for Counts I through IV and pursuant to 28 U.S.C. §1367 for Counts V and VI.  In addition, plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331, 1337, and 1367 for Count VII.

**III.      Venue**

14.      Venue in this district is proper under 28 U.S.C. § 1391 because Defendants maintain multiple offices in this district and because a substantial part of the events or omissions giving rise to this claim occurred in this district, where Ms. Green took out her loan.

**IV.      Facts**

15.      On December 29, 2011, Joyce Green took out a so-called payday loan (the "Payday Loan") from Defendant U.S. Cash Advance Illinois LLC doing business as The Loan Machine.

16.      The amount of the Payday Loan was $1,000 and was to be payable within 120 days.

17.      The annual percent rate (APR) of the Payday Loan was 176 percent.

18.      The APR informs the consumer the cost of the credit as a yearly rate.

19.      The finance charge of the Payday Loan was listed as $548.71.

20.      The finance charge is the total cost of the credit of the life of the loan stated as a dollar amount

21.      In May 2012, Ms. Green had a $200 balance remaining on the Payday Loan.

22.      Notwithstanding prohibitions on rollovers by the PLRA, 815 ILCS 122/2-30, the Loan Machine proposed that Ms. Green roll over the remaining $200 of the Payday Loan into a new loan agreement (the "Agreement").

3

23.     The documents related to the Agreement that were provided to Ms. Green simply describe the lender as The Loan Machine.  They do not contain any indication as to which of the Defendants is a party to the Agreement, or whether they both are.

24.     The Agreement was devised so as not to be a payday loan, which is regulated by Illinois law, with extensive protections for consumers.

25.     A payday loan would have been more appropriate for a person in plaintiff's financial situation.

26.     Instead the Loan Machine proposed that plaintiff open a "line of credit account" for $1650, on the understanding that plaintiff would withdraw that entire amount on the same day as a single loan.

27.     Under section 17.2 of CILA, the APR on a consumer loan of in excess of $1,500, but no more than $4,000, and not covered by the PLRA, is subject to a limit of 99 percent.

28.     While the Agreement states that the APR is only 36 percent, the APR was actually over 200 percent.

29.     Attached as Exhibit A is the "Approved Application Summary" for the Agreement, signed by Plaintiff on May 8, 2012.

30.     The "Approved Application Summary" states that plaintiff is withdrawing as a single advance the entire approved amount of $1,650.

31.     Attached as Exhibit B is the Agreement, signed by plaintiff on May 8, 2012.

32.     The Agreement states that plaintiff has a line of credit of $1,650.

33.     The Loan Machine  knew the line of credit was a spurious substitute for a single loan transaction.

4

34.     As to the APR, Section 4 of the Agreement, entitled "Calculation of Interest," states in relevant part, "We figure the periodic interest on your Account by applying the daily periodic rate of **0.0986301%** (this is an **ANNUAL PERCENTAGE RATE of 36.00%**) to the 'average daily principal balance' of your Account (including current transactions)."

35.     Section 4 says nothing about an "account maintenance" fee.

36.     Furthermore, the average daily principal balance does not include an "account maintenance fee."

37.     Section 6 of the Agreement, however, states that there is an additional "account maintenance fee."

38.     Section 6.a. states in relevant part:   "**Account Maintenance Fee**. You will be charged a fee of 14% of the 'average daily principal balance' (as defined in section 4 above) of your account each billing cycle for Draws from $100.00-$3,499.000 [sic] or You will be charged a fee of 10% of the 'average daily principal balance' (as defined in section 4 above) of your account each billing cycle for Draws from $3,500.00-$5,000.00.

39.     Following the signature page is the "Federal Truth-in-Lending Disclosure Statement."

40.     On the Federal Truth-in-Lending Disclosure Statement, the APR is again falsely listed as being only 36%.

41.     In a separate box for "Fees," the disclosure statement lists additional charges which are not part of the APR of 36 percent.

42.     In particular, there is a "ADPB Transaction Fee" that is "14% of the average daily principal balance for each 30 day billing cycle for draws of $100.00-$3,499.00."

43.     Attached as Exhibit C is plaintiff's receipt for the withdrawal of $1,650 with an unexplained "transaction fee debit" of $33.00 that presumably represents the 2% "cash advance fee" described in the Agreement for every withdrawal.

44.     Exhibit C states that the due date for the first payment is July 3, 2012.

45.     Exhibit C also states that the next statement date is June 12, 2012.

46.     The Loan Machine, however, failed to send any billing statement in June 2012.

47.     On June 26, 2012, eager to pay off the loan, plaintiff made an early payment of $400, though no billing statement had been given to her.

48.     She went in person to the office at 1909 W. 87th Street, Chicago, Illinois to make the payment of $400.

49.     The Loan Machine has provided no billing statement for June 2012 and did not give her one even at this office.

50.     Upon payment plaintiff received only a receipt dated June 25, 2012, which is attached as Exhibit D.

51.     As set forth in the receipt, the Loan Machine allocated the $400 payment as follows: $58.59 to "interest," $75.91 to principal, and $265.50 to a "transaction fee."

52.     The next payment was due on August 3, 2012.

53.     Once again the Loan Machine failed to send a monthly billing statement prior to this payment.

54.     On August 3, 2012 Plaintiff again went in person to the same Loan Machine office and made a payment of $300.

55.     As set forth in the receipt given to Plaintiff and attached as Exhibit E, the Loan Machine applied the payment of $300 as follows: $49.03 to "interest," $24.98 to principal, and $225.99 to a "transaction fee."

56.     After making this second payment, Plaintiff called to request a billing statement, which the Loan Machine sent to her in August 2012.  The monthly billing statement is attached as Exhibit F.

57.     The statement indicated that:

a.   the Loan Machine charged Plaintiff a $1.50 "Paper Statement Fee Debit," which is not mentioned in the Agreement, presumably because Plaintiff requested the monthly statement that she was entitled to by law;

b.   the Loan Machine charged Plaintiff $47.86 in "interest" or "finance charges" for the month covered by the statement;

c.   the Loan Machine charged Plaintiff a "Transaction Fee" of $219.13;

d.   despite the fact that Plaintiff had already made $700 in payments, Plaintiff's new balance on her original loan of $1,650 was $1,817.60; and

e.   Plaintiff owed a minimum payment of $283.98 by August 31, 2012.

58.     The monthly billing statement lists the "daily periodic rate" as 0.000990 and the "corresponding APR" as 36%.

59.     However, the statement also listed a 200.840% "effective APR."

60.     Until she requested the monthly billing statement, plaintiff had not received any disclosure that the APR or "EFFECTIVE APR" was 200.840% percent.

61.     Pursuant to TILA and its implementing regulations, the finance charge on a loan is supposed to include the entire cost of the credit to Plaintiff, which would include the "account

maintenance fee," since it is really just an additional 14% monthly interest rate that the Loan Machine charges on top of the disclosed 36% APR.

62. Thus, the monthly billing statement attached as Exhibit F did not properly disclose the amount of the finance charge added to the account during the period or the APR.

63. The monthly billing statement did not contain the address the Loan Machine used for receiving billing inquiries.

64. The monthly billing statement did not contain repayment information that would apply to the outstanding balance, including the number of months that it would take to repay the entire amount if Plaintiff made only the minimum monthly payments, the total cost to Plaintiff of paying off the entire balance making only the minimum monthly payments, or the monthly payment that would be required to eliminate the outstanding balance in 36 months.

65. The monthly billing statement did not contain a toll-free number at which Plaintiff could receive information about accessing credit counseling and debt management services.

66. Plaintiff made a payment of $283.93 on August 31, 2012.

67. As set forth in the receipt given to Plaintiff and attached as Exhibit G, the Loan Machine applied the payment as follows: $47.86 to "interest," $15.44 to principal, and $220.63 to a "Transaction Fee."

68. Plaintiff now became aware that despite making three payments totaling $983.93 over the summer on the $1,650 loan, the balance due was still $1533.67.

69. The Loan Machine once again failed to send Ms. Green a billing statement in September until she requested one.

70. The Agreement contains an arbitration agreement in Section 17 that provides in relevant part:

> All disputes, claims or controversies between the parties of this Agreement, including all disputes, claims or controversies arising from or relating to this Agreement, no matter by whom or against whom, including the validity of this Agreement and the obligations and scope of the arbitration clause, shall be resolved by binding arbitration by one arbitrator by and under the Code of Procedure of the National Arbitration Forum.

71.     In response to a great deal of controversy surrounding its anti-consumer practices, culminating in a lawsuit brought by the Attorney General for the State of Minnesota, the National Arbitration Forum (NAF) agreed to stop accepting consumer arbitrations in July 2009.

72.     Thus, the NAF is unavailable as an arbitration forum.

73.     The terms of the Agreement make clear that the use of the NAF is an integral term of Section 17.

74.     Rule 1 of the NAF Code of Procedure states that the "Code shall be administered only by the National Arbitration Forum or by any entity or individual providing administrative services by agreement with the National Arbitration Forum."

75.     Rule 48 of the NAF Code of Procedure states, "If Parties are denied the opportunity to arbitrate a dispute, controversy or Claim before the [NAF], the Parties may seek legal and other remedies in accord with applicable law."

76.     Rule 48 of the NAF Code of Procedure also states, "In the event of a cancellation of this Code, any Party may seek legal and other remedies regarding any matter upon which an Award or Order has not been entered."

77.     Thus, under the terms of the code made applicable to arbitrations by the Agreement, because NAF is not available as a forum, Plaintiff is free to pursue legal remedies such as this suit.

78.     Moreover, Section 17 of the Agreement is unconscionable and unenforceable against Plaintiff because: it is a one-sided term contained in a contract of adhesion; it is vague

and absurd given that it provides for arbitration by a forum that was not available at the time the Agreement was executed; and it represents a clear attempt by the Loan Machine to subject Plaintiff to arbitration in a forum that was known to be biased and anti-consumer.

79.     Neither the NAF Code of Procedure nor the Agreement provide for class or collective actions or fee-shifting.

80.     Indeed, the NAF Code of Procedure would have required that Plaintiff pay certain arbitration fees.

81.     Thus, enforcement of the Arbitration clause would deny Plaintiff a meaningful opportunity to bring the claims she is pursuing here.

**V.      Class allegations**

82.     Pursuant to Rule 23(b)(2) and (3) of the Rules of Federal Civil Procedure, plaintiff brings this action on her own behalf and on behalf of all those similarly situated – whether in Illinois and outside of Illinois – to whom the Loan Machine has failed to make the proper disclosures required by TILA. The proposed class includes all persons who have not received proper disclosure of the APR and finance charges of their loans, including but not limited to: (a) customers who have been made subject to monthly account maintenance fees which are not included as part of the APR disclosed in their loan agreements, (b) customers who have not received the monthly billing statements required for such loan agreements, (c) persons who have received monthly billing statements that do not properly state the finance charge actually being imposed in such loan agreements, or the repayment information and amortization schedule required by 15 U.S.C. §1637(b).

83.     Plaintiff seeks to certify a subclass of Illinois residents for the purpose of asserting the claims in Count V and VI, including but not limited to: (a) persons who have been charged unconscionable rates of interest over 99 percent; (b) persons whom the Loan Machine

knew or should have known could not repay the loan agreements they were entering; and (c) persons who entered into illegal rollovers of payday loans with the Loan Machine.

84.    On information and belief, Plaintiff alleges that the persons who would be in the class and subclass described above are too numerous to join.

85.    There are common questions of fact and law, including those regarding the failure of the defendant to make the required disclosures as set out for the class and defendant's practices of charging unlawful interest rates and offering unlawful rollovers for the subclass.

86.    The claims of plaintiff Green are typical of the claims of other class and subclass members.

87.    Plaintiff Green will adequately represent the interests of the class and subclass.

**Count I**
**(TILA Violation – Misrepresentation of APR)**

88.    As set forth above, on May 8, 2012, the Loan Machine set up an open-ended account for Plaintiff and falsely represented in section 4 of the Agreement that the APR on any withdrawal would be only 36 percent.

89.    As further set forth above, on the same day of May 8, 2012, the Loan Machine advanced the entire balance of $1,650 without ever disclosing orally or in writing that the actual APR on this advance would be over 200 percent.

90.    Accordingly, the Loan Machine failed to disclose the true APR as the term is defined in 15 U.S.C. § 1606(a).

91.    By representing that the APR would be 36 percent on any advance made to her and failing to add the cost of the transaction fee as part of the APR, and in violation of 15 U.S.C. §1637(a)(4) of the Truth in Lending Act, Loan Machine failed to disclose each rate that would be

used to determine the finance charge and the "corresponding nominal annual percent rate determined by multiplying the periodic rate by the number of periods in a year."

92.     For the acts set forth above, plaintiff is entitled to damages and penalties under 15 U.S.C. §1640.

Wherefore Plaintiff prays this court to:

A.  Certify the class described above under Federal Rules of Civil Procedure 23(b)(2) and (3);

B.   Order rescission of the Agreement between Defendants and Plaintiff and of any similar agreement between Defendants and any other class member containing misrepresentations of the APR;

C.  Grant Plaintiff and other class members an award of damages and penalties in the maximum amount permitted in a class action under 15 U.S.C. §1640(a)(2)(B); and

D.  Grant Plaintiff her legal fees and costs and such other relief as may be proper.

**Count II**
**Failure to Send Monthly Billing Statements**

93.     From May 8, 2012 until August 2012, Defendants failed to mail or send or give Plaintiff any monthly billing statement with the required TILA disclosures.

94.     Pursuant to 15 U.S.C. §1637, Defendants are required to provide Plaintiff with such a statement for each billing cycle.

95.     By failing to provide such a monthly periodic billing statement for her line of credit, defendants violated 15 U.S.C. §1637(b).

96.     For the acts set forth in this Count, Plaintiff is entitled to damages and penalties under 15 U.S.C § 1640.

Wherefore Plaintiff prays this court to:

    A. Certify the class described above under Federal Rules of Civil Procedure 23(b)(2) and (3);

    B. Order rescission of the Agreement between Defendants and Plaintiff and any similar agreement between Defendants and other class members where Defendants have failed to send monthly billing statements making the required TILA disclosures;

    C. Award Plaintiff and other class members an award of damages and penalties in the maximum amount permitted under 15 U.S.C. §1640; and

    D. Grant Plaintiff's legal fees and costs and such other relief as may be proper.

**Count III**
**Failure of Monthly Billing Statement to Conform to 15 U.S.C. §1637**

97.    At Plaintiff's request, Defendants finally provided her a monthly billing statement for the billing period running from July 13, 2012 to August 13, 2012, attached as Exhibit F.

98.    The monthly billing statement fails to meet the requirements of 15 U.S.C. § 1637(b).

99.    Such a statement must include, among other things: repayment information that would apply to the outstanding balance, including the number of months that it would take to repay the entire amount if Plaintiff made only the minimum monthly payments, the total cost to Plaintiff of paying off the entire balance making only the minimum monthly payments, and the monthly payment that would be required to eliminate the outstanding balance in 36 months; and a toll-free number at which Plaintiff could receive information about accessing credit counseling and debt management services.

100.    The statement Defendants provided did not contain any of these disclosures.

101.    For the acts set forth in this Count, plaintiff is entitled to damages and penalties under 15 U.S.C. §1640.

Wherefore plaintiff prays this court to:

A.  Certify the class described above under Federal Rules of Civil Procedure 23(b)(2) and (3);

B.  Order rescission of the Agreement between Plaintiff and Defendants and of any similar agreement between Defendants and any other class member for failure to send monthly billing statements with the required TILA disclosures;

C.  Grant plaintiff and other class members an award of damages and penalties in the maximum amount permitted under 15 U.S.C. §1640; and

D.  Grant plaintiff her legal fees and costs and such other relief as may be proper.

**Count IV**
**Misrepresentation of Finance Charge in Monthly Statement of August 2012**

102.    In the monthly billing statement attached as Exhibit F, Defendants falsely state that the finance charge is only $47.86 and fail to include the $219.13 "transaction fee" as part of the finance charge.

103.    As set forth in 15 U.S.C. §1605, the "finance charge" in connection with any credit transaction "shall be determined as the sum of all charges, payable directly or indirectly by the person to who the credit is extended and imposed directly or indirectly by the creditor as an incident to the extension of credit."

104.    By excluding a transaction fee of $219.13 from the finance charge and stating that the finance charge was only $47.86, the defendants violated 15 U.S.C. §1605 and 15 U.S.C. §1637(b)(4), which requires the billing statement to disclosure the amount of any finance charge added to the accounting during the period.

14

105.    For the acts set forth in this count, plaintiff is entitled to damages and penalties under 15 U.S.C. §1640.

Wherefore plaintiff prays this court to:

A.  Certify the class described above under Federal Rules of Civil Procedure 23(b)(2) and (3);

B.  Order rescission of the Agreement between Defendants and Plaintiff and of any similar agreement between Defendants and any other class members for the failure to disclose the actual finance charge to these borrowers;

C.  Grant Plaintiff and other class members an award of damages and penalties in the maximum amount permitted under 15 USC §1640; and

D.  Grant Plaintiff her legal fees and costs and any other relief that is proper.

### Count V
### Illinois Consumer Installment Loan Act

106.    Plaintiff invokes the supplemental jurisdiction of this Court for the state law claims set forth in Count V for the subclass of Illinois customers identified above.

107.    In making loans of less than $40,000 to persons in Illinois that are not covered by the PLRA, the defendants are obligated to be licensed under the Illinois Consumer Installment Loan Act, 205 ILCS 670/1 *et seq.* and comply with the provisions of CILA and other Illinois laws.

108.    Section 15 of CILA, 205 ILCS 670/15, prohibits lenders – including defendants – from charging interest "at an annual percentage rate exceeding 36 percent…" unless such lenders are making "small consumer loans" within the meaning of Section 15(b) of CILA, 205 ILCS 670/15(b).

109.     Furthermore, while Section 17.2 of CILA permits a higher rate of interest for "small consumer loans" over $1,500, that section still prohibits Defendants from charging an APR of more than 99 percent.

110.     In the monthly billing statement attached as Exhibit F, defendants admit that for a "small consumer loan" of $1,650, they are charging plaintiff an "effective APR" of 200 percent, twice as much permitted by Section 17.2 of CILA, 205 ILCS 670/17.2.

111.     Under 205 ILCS 670/20.7, Plaintiff is entitled to sue for damages for any violation of the Act and is entitled to the remedies available for a civil action.

112.     Under 205 ILCS 670/20(b), Plaintiff is also entitled to attorney fees and costs.

Wherefore Plaintiff prays this court to:

A.   Certify the Illinois subclass proposed above;

B.   Order rescission of the Agreement between Plaintiff and Defendants and of any similar agreement between Defendants and any other class member containing such an unlawful APR;

C.   Grant Plaintiff and each class member an appropriate award of compensatory and punitive damages;

D.   Enjoin defendants from lending money at rates in excess of the rates permitted by CILA; and

E.   Grant plaintiff her legal fees and costs or an award of fees out of the monetary recovery to the class.

**Count VI**
**Payday Loan Reform Act and Consumer Fraud and Deceptive Business Practices Act**

113.     Plaintiff invokes the supplemental jurisdiction of this Court for the state law claims set forth in Count VI for the subclass of Illinois customers identified above.

16

114.     As described above, when Defendants offered Plaintiff the Agreement, a $1,650 loan, Plaintiff had $200 outstanding on the Payday Loan she had previously accepted.

115.     Defendants offered Plaintiff the Agreement with the understanding that she would use $200 of the $1,650 loan to pay off the outstanding balance on her Payday Loan.

116.     As set forth above, the Agreement applied a 200% APR to Plaintiff's loan, while the Payday Loan applied only a 176% APR.

117.     Under the PLRA, "rollover" means "to refinance, renew, amend, or extend a loan beyond its original term." 815 ILCS 122/1-10.

118.     Thus, Defendants engaged in a "rollover" of Plaintiff's Payday Loan.

119.     The PLRA prohibits rollovers except as provided in Section 2-5(c) of the Act. 815 ILCS 122/2-30.

120.     Section 2-5(c) does not apply because it only allows for one refinancing of a installment payday loan as a new installment payday loan, "provided that the total duration of indebtedness on the initial installment payday loan combined with the term of indebtedness of the new loan refinancing that initial loan, shall not exceed 180 days." 815 ILCS 122/2-5(c).

121.     The Agreement is not an installment payday loan and its term far exceeds 180 days.

122.     Thus, Defendants violated the PLRA.

123.     Section 4-10(b) of the PLRA states that any material violation of the PLRA constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act. 815 ILCS 122/4-10(b).

Wherefore Plaintiff prays this Court to:

A.  Certify the Illinois subclass proposed above;

    B.  Order rescission of the Agreement between Plaintiff and Defendants and of any similar agreement between Defendants and any other class member containing such an unlawful APR;

    C.  Grant Plaintiff and each class member an appropriate award of compensatory and punitive damages under Section 10a of the Consumer Fraud and Deceptive Business Practices Act;

    D.  Enjoin defendants from engaging in illegal rollovers of payday loans; and

    E.  Grant Plaintiff her legal fees and costs and such other relief as may be proper.

**Count VII**
**Consumer Fraud and Deceptive Practices Act**

124. Plaintiff invokes the general federal question jurisdiction of this Court under 28 U.S.C. §1331 and §1337 as well as the supplemental jurisdiction of this Court under 28 U.S.C. §1367 for the subclass identified in paragraph 71.

125.  The defendants had no reasonable basis to believe and did not believe that plaintiff could repay a loan at an effective APR of 200 percent.

126. Defendants knew or should have known that it would have taken Plaintiff eight years to repay the loan if she made only the minimum monthly payments.

127. Both the federal TILA statute and Illinois law prohibit lenders from making mortgage loans that borrowers cannot reasonably be expected to repay or service.

128. Furthermore, the Dodd-Frank Wall Street Reform and Consumer Protection Act makes it unlawful "to offer or provide to a consumer any financial product or service not in conformity with federal consumer financial law, or otherwise commit any act or omission in violation of a Federal consumer financial law; or… *to engage in any unfair, deceptive or abusive act or practice*."  12 U.S.C. §5536 (emphasis added).

129.     As set forth above, Defendants loaned Plaintiff $1,650 at an APR of 200 percent, though Plaintiff's only income is Social Security income.

130.     Defendants made no good faith inquiry or determination as to whether in fact plaintiff could repay such a loan.

131.     By making such a loan to Plaintiff, Defendants engaged in an act that is inconsistent and in conflict with federal public policy and is the kind of "unfair, deceptive or abusive act or practice" prohibited by 12 U.S.C. §5536.

132.     Section 10a of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10a, allows Plaintiff and others to sue for unfair trade practices that violate either federal or state public policy, that are immoral and oppressive, or that cause substantial injury to consumers.

133.     Similarly, consistent with federal and state law prohibitions against mortgage loans that borrowers cannot be expected to repay, it is contrary to both federal and state public policy and an abusive act or practice within the scope of the Dodd-Frank Act and Section 2 of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2, for Defendants to make loans to Plaintiff and other persons when Defendants know or should know that many such persons cannot repay these loans or are not likely to be able to repay such loans or when Defendants do not even bother to determine whether such borrowers are in fact able or likely to repay such loans.

134.     Furthermore, it is immoral, oppressive, and unconscionable for Defendants to make loans that they know or should know Plaintiff and others cannot repay or are not likely to repay, and to recklessly inflict emotional distress and suffering by imprisoning these short-term

borrowers in long-term debt from which Defendants know that these persons cannot easily escape.

135.    Furthermore, Defendants cause substantial injury, and know or should know that they cause enormous financial distress, by inducing Plaintiff and others to engage in usurious loans that they cannot repay or are not likely to be able to repay because of their limited incomes.

136.    This is especially true since Defendant knew or should have known that Plaintiff's only income was her Social Security.

137.    Plaintiff has suffered damages and is entitled to rescission and compensatory and punitive damages.

WHEREFORE plaintiff prays this Court:

A. Certify the Illinois subclass proposed above;

B. Declare that by making loans when Defendant does not have a reasonable basis to believe that Plaintiff or any other class member is able to repay the loan, Defendants have engaged in an unfair practice within the scope of Section 2 of the Consumer Fraud and Deceptive Practices Act;

C. Grant plaintiff and each class member compensatory and punitive damages for the Defendants' pattern and practice of such unfair trade practices under Section 10a of the Consumer Fraud and Deceptive Practices Act;

D. Enjoin Defendants from extending loans to consumers when Defendants know or should know that such borrowers are not able or likely to have the means to repay such high interest loans in a reasonable period of time and when Defendants have not made any good faith determination that such borrowers can in fact repay such loans or that such loans are appropriate for them; and

E.  Grant Plaintiff her legal fees and costs and such other relief as may be proper.

**Jury Demand**

Plaintiff hereby demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all issues so triable.


Dated: October 30, 2012                                        By:

                                                               JOYCE GREEN

                                                               ___/s/ Sean Morales-Doyle_____
                                                               One of Plaintiff's Attorneys

Thomas H. Geoghegan
Sean Morales-Doyle
Michael P. Persoon
Despres, Schwartz & Geoghegan
77 West Washington Street, Suite 711
Chicago, Illinois 60602
(312) 372-2511