# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOYCE GREEN, on behalf or herself and all others similar situated, ) ) ) Plaintiff, ) ) v. ) ) U.S. CASH ADVANCE ILLINOIS, LLC, ) d/b/a THE LOAN MACHINE, and TITLE ) LOAN COMPANY d/b/a THE LOAN ) MACHINE, ) ) Defendants. ) | Judge Joan B. Gottschall<br><br>Civil Case No. 12 C 8079 |

## MEMORANDUM OPINION & ORDER

Plaintiff Joyce Green sued Defendants U.S. Cash Advance, LLC, and Title Loan Company (collectively, "The Loan Machine") for violations of the Truth in Lending Act, 15 U.S.C. § 1601, the Illinois Consumer Installment Loan Act, 205 Ill. Comp. Stat. 670/1, the Illinois Payday Loan Reform Act, 815 Ill. Comp. Stat. 122/4-10(b), and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/10a. Green sued on behalf of herself and a class of others similarly situated. She alleges that The Loan Machine extended credit to her and to other consumers in Illinois and Missouri on unconscionable and fraudulent terms, by misrepresenting the annual percentage rate on the loans, failing to send billing statements, failing to provide disclosures, misrepresenting finance charges, improperly "rolling over" "payday loans" into new loans, and making loans with no expectation that the borrowers could repay them. Green seeks rescission and compensatory and punitive damages on behalf of

herself and other putative class members. Now before the court is The Loan Machine's motion to dismiss and compel arbitration, to dismiss the class claims, and to stay the case pending arbitration. For the following reasons, the court denies the motion.

**I. BACKGROUND**

In support of its motion to dismiss the case and compel individual arbitration, The Loan Machine relies on an arbitration provision in the loan agreement entered into by Green. The agreement is dated May 8, 2012. (Defs.' Mot. to Compel Arbitration Ex. A (Loan Agreement).) The arbitration clause states as follows:

> 17. ARBITRATION: All disputes, claims or controversies between the parties of the Agreement, including all disputes, claims or controversies arising from or relating to this Agreement, no matter by whom or against whom, including the validity of this Agreement and the obligations and scope of the arbitration clause, shall be resolved by binding arbitration by one arbitrator by and under the Code of Procedure of the National Arbitration Forum. This arbitration agreement is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes through a court, but that they prefer to resolve their differences through arbitration, except as provided herein. THE PARTIES WOULD HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE DISPUTES THROUGH A COURT BUT HAVE AGREED TO RESOLVE DISPUTES THROUGH BINDING ARBITRATION, EXCEPT THAT THE TITLE LENDER MAY CHOOSE AT TITLE LENDER'S SOLE OPTION TO SEEK COLLECTION OF PAYMENT(S) DUE IN COURT RATHER THAN THROUGH ARBITRATION. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY TITLE LENDER. The parties agree and understand that all other laws and actions, including but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this Agreement.

(*Id.* ¶ 17 (emphasis in original).)

The arbitrator named in the clause, the National Arbitration Forum ("the NAF"), agreed to stop accepting consumer arbitrations in July 2009, pursuant to a settlement agreement with the Minnesota Attorney General. *See CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 677 n.2 (2012) (Ginsburg, J., dissenting); *Meskill v. GGNSC Stillwater Greeley LLC*, 862 F. Supp. 2d 966, 968-69 (D. Minn. 2012). A year-long investigation by the Minnesota Attorney General led to allegations that the NAF was biased against consumers and "represented to corporations that it would appoint anti-consumer arbitrators and discontinue referrals to arbitrators who decided cases in favor of consumers." *Khan v. Dell*, 669 F.3d 350, 358 (3rd Cir. 2012) (Sloviter, dissenting) (citing *Arbitration or "Arbitrary": The Misuse of Mandatory Arbitration to Collect Consumer Debts: Hearing Before the H. Domestic Policy Subcomm. of Comm. on Oversight and Gov't Reform*, 111th Cong. (July 22, 2009)).

As the arbitrator named in the loan agreement, the NAF, is unavailable, The Loan Machine moves the court to appoint a substitute arbitrator, to compel individual arbitration, and to dismiss the class claims. Green argues that the unavailability of the NAF renders the arbitration clause invalid, and that she is therefore free to pursue other remedies, including this putative class action.[1]

## II. LEGAL STANDARDS

Under the Federal Arbitration Act ("FAA"), written provisions in a contract "to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the Supreme Court has repeatedly stated, this provision establishes

---

[1] Green presents two alternative arguments for invalidating the arbitration provision. As the court concludes that the arbitration clause is void because the designated arbitrator is unavailable, it will not address Green's arguments that the arbitration agreement is unconscionable and that the FAA violates the Tenth Amendment.

3

"a liberal federal policy favoring arbitration agreements." *CompuCredit Corp.*, 132 S. Ct. at 669 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Thus, as a general rule, courts must enforce agreements to arbitrate according to their terms. *Id.*

The FAA also includes a provision stating that a court may, under certain circumstances, preserve an arbitration agreement by naming a substitute arbitrator when the arbitrator designated in the agreement is unavailable. Section 5 of the FAA provides in relevant part:

> . . . [I]f no method [of naming an arbitrator] be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5.

A substitute arbitrator may not be appointed, however, if the provision naming the arbitrator was "an integral part of the agreement." *Khan*, 669 F.3d at 353-54. Thus, the court must decide before applying § 5 whether the chosen arbitration forum is "integral" to the agreement or merely an "ancillary logistical concern." *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000). Where, as here, an agreement expressly provides that the arbitration provision is governed by the FAA, the question of whether a provision is integral to an agreement is governed by federal law. *See Khan*, 669 F.3d at 354 ("Because this is a question of arbitrability, it is governed by the FAA."); *Dominium Austin Partners, LLC v. Emerson*, 248 F.3d 720, 729 n. 9 (8th Cir. 2001) ("The construction of an agreement to arbitrate is governed by the FAA unless the agreement expressly provides that state law should govern."). The choice of forum is integral if the parties would not have entered into the agreement absent the selected

4

forum. *Jones v. GGNSC Pierre LLC*, 684 F. Supp. 2d 1161, 1166 (D.S.D. 2010). This is in keeping with the Supreme Court's pronouncements that the "central purpose" of the FAA is "to ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995).

Plaintiffs argue that Illinois law should apply to the construction of the arbitration provision, as the loan agreement itself designates Illinois law as the law that governs the agreement. They also point to the Seventh Circuit's statement that, under § 2 of the FAA, "[w]hether a binding arbitration agreement exists is determined under principles of state contract law."). *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002). Plaintiffs do not reconcile their argument, however, with the statement in the arbitration clause that it is governed by the FAA. By this court's interpretation of *Tinder*, *Khan*, and *Dominium Austin Partners*, federal law governs the construction of the arbitration agreement itself—including whether the designation of the arbitrator is "integral." The impact of that construction on the viability of the agreement is then a question of state law. Under Illinois law, if a provision naming an arbitrator is integral to an arbitration agreement, the agreement to arbitrate fails when the arbitrator is not available. *Mori v. E. Side Lenders, LLC*, 11 C 1324, 2011 WL 2518966, at *12-13 (N.D. Ill. June 24, 2011) (explaining that in Illinois, an "agreement to arbitrate must fail" where the designation of an unavailable arbitrator is integral to the agreement). Regardless, whether the governing law is federal law or state law has little impact on the court's analysis. When addressing facts similar to those presented here, the key question for both federal and state courts has been: Was the provision naming the arbitrator "integral" to the agreement? *See, e.g.*, *Carr v. Gateway*, 944 N.E.2d 327, 333 (Ill. 2011) (citing various district-, circuit-, and state-court decisions in determining that the designation of the NAF as an arbitrator was integral to an agreement).

5

### III. ANALYSIS

As the NAF was one of this country's largest providers of arbitrators for consumer disputes, the problem of what to do when an arbitration clause specifies the NAF as an arbitrator has presented itself in many state and federal courts. "This question has vexed courts across the country and resulted in a substantial split of authority." *Ranzy v. Tijerina*, 393 F. App'x 174 (5th Cir. 2010) (unpublished) (holding that arbitration clause failed because designation of the NAF was integral to the agreement); *see also, e.g.*, *Carideo v. Dell, Inc.*, No. C06-1772JLR, 2009 WL 3485933 (W.D. Wash Oct. 26, 2009) (holding that designation of the NAF was integral to an arbitration agreement); *Rivera v. Am. Gen. Fin. Servs., Inc.*, 150 N.M. 398 (N.M. 2011) (same); *Carr*, 944 N.E.2d 327 (same); *but see, e.g.*, *Khan*, 669 F.3d at 357 (holding by 2-1 majority that provision designating the NAF was not integral to an arbitration agreement); *Meskill*, 862 F. Supp. 2d 977 (holding that the unavailability of the NAF could be remedied by appointing a substitute arbitrator under the FAA, because the designation of the NAF was not integral to the agreement).

Having reviewed many of these decisions, the court has culled from them five factors relevant to determining whether the designation of a specific arbitrator is "integral" to an arbitration agreement: 1) whether the language designating the arbitrator is mandatory or permissive; 2) whether the arbitration clause designates a particular arbitrator or merely a particular set of rules to be applied; 3) whether the arbitration agreement contains a "severance" provision or a provision for substitution of the arbitrator; 4) the relative weight in the arbitration agreement given to the designation of the arbitrator versus the requirement that disputes be sent to binding arbitration; and 5) whether the arbitrator was likely to have been chosen because of its unique characteristics.

First, courts have considered whether the language of the arbitration provision makes use of the designated arbitrator mandatory. *See, e.g.*, *Ranzy*, 393 F. App'x at 176. Here, the clause uses mandatory language. It states that disputes "*shall* be resolved by binding arbitration by one arbitrator by and under the Code of Procedure of the National Arbitration Forum." (emphasis added). In *Ranzy*, the Fifth Circuit considered nearly identical language and concluded that "the parties explicitly agreed that the NAF shall be the exclusive forum for arbitrating disputes." *Id.* The court likewise finds that the mandatory word "shall" applies to the designation of the NAF. *But see Khan*, 669 F.3d at 355 (finding that clause stating that disputes "shall be resolved exclusively and finally by binding arbitration administered by the National Arbitration Forum" was ambiguous because "'exclusively' could be read to modify 'binding arbitration,' 'the National Arbitration Forum,' or both") (emphasis omitted). This distinguishes the agreement at issue from those using permissive language such as "may." *See, e.g.*, *Diversicare Leasing Corp. v. Nowlin*, 11 C 1037, 2011 WL 5827208, at *2 (W.D. Ark. Nov. 18, 2011) (holding that designation of arbitrator was not integral where agreement stated that "claims may be filed at any office of the National Arbitration Forum"). This factor cuts strongly in favor of finding the designation of the NAF integral to the loan agreement.

Second, courts have considered whether a provision designates a particular arbitrator or merely a particular set of rules for arbitration. Where an arbitration clause merely names a code, courts have held that a substitute arbitrator could be named who could apply that code or its principles. *See, e.g.*, *Reddam v. KPMG LLP*, 457 F.3d 1054, 1059-60 (9th Cir. 2006), *overruled on other grounds by Atl. Nat'l Trust LLC v. Mt. Hawley Ins. Co.*, 621 F.3d 931, 940 (9th Cir. 2010) (choice of arbitrator was not integral when the arbitration clause merely referred to a set of rules). In *Jones*, for example, a South Dakota district court held that language stating that

7

arbitration was to be conducted "in accordance with the National Arbitration Forum Code of Procedure, which is hereby incorporated into this agreement" did not "mandate the NAF per se." 684 F. Supp. 2d at 1167. Extremely similar language was at issue in *Meskill*, in which a Minnesota district court concluded that "if the parties had contemplated the NAF would be their exclusive arbitral forum, they could have easily said so—there would be no need for them to do so obliquely by specifying that the arbitration must be conducted by the NAF's rules." 862 F. Supp. 2d at 973 (internal quotation marks omitted).

Here, in contrast, the arbitration provision in question states that arbitration shall be conducted "by and under the Code of Procedure of the National Arbitration Forum." The Loan Machine argues that this language merely refers to the Code of Procedure, and does not actually designate the NAF as the arbitrator. But that is a misreading of the arbitration clause. Although the language is admittedly clunky, it is clear to the court that the agreement expresses the intent that the arbitration be conducted *by* the NAF and *under the Code of Procedure of* the NAF. Any other reading would render part of the phrase "by and under" surplusage. Thus, the court concludes that the NAF, and not just its Code of Procedure, is expressly designated in the agreement.

The court further notes that the most recent NAF Code of Procedure provides that the "Code shall be administered only by the National Arbitration Forum or by any entity or individual providing administrative services by agreement with the National Arbitration Forum." *Carr*, 944 N.E.2d at 336 (quoting NAF Code of Procedure, available at http://www.adrforum.com/). The Illinois Supreme Court concluded that the restrictions placed on the use of the Code of Procedure "militate[] in favor of a finding that the designation of the NAF and its rules was integral to the parties' agreement to arbitrate." The court agrees that the

language of the Code makes it unlikely that the parties anticipated that another arbitrator might conduct the arbitration proceedings. Additionally, as the NAF's specific set of rules could have great impact on the conduct, costs, and outcomes of arbitration proceedings, the requirement that the arbitration proceedings be in accordance with the NAF Code of Procedure provides further support for the conclusion that the loan agreement contemplated that the NAF would be the exclusive arbitrator.

Third, courts have searched agreements for severance provisions or other indications that an arbitration clause is intended to survive even if the designated arbitrator is unavailable. For example, in *Jones*, a free-standing arbitration agreement contained a provision stating: "In the event a court having jurisdiction finds any portion of this agreement unenforceable, that portion shall not be effective and the remainder of the agreement shall be effective." The South Dakota district court concluded that the parties intended for the agreement to survive even if a provision of the agreement became invalid. 684 F. Supp. 2d at 1167. *See also Estate of Eckstein v. Life Care Ctrs. of Am.*, 623 F. Supp. 2d 1235, 1238 (E.D. Wash. 2009) (finding that unavailability of arbitrator did not render agreement unenforceable, based in part on severance clause stating that "[i]n the event that any portion of the Arbitration Agreement is determined to be invalid or unenforceable, the remainder of this Arbitration Agreement will be deemed to continue to be binding").

Here, the loan agreement itself states, "The unenforceability or invalidity of any portion of this Agreement shall not render unenforceable or invalid the remaining portions thereof." (Loan Agreement ¶ 16(e).) This statement does not appear in the arbitration clause itself, however. The arbitration clause contains no severance provision, in contrast to the severance provisions in *Jones* and *Estate of Eckstein*, which explicitly refers to the survival of the

9

arbitration agreement. The arbitration clause also contains no language stating that a substitute arbitrator may be appointed if the designated arbitrator is unavailable. The court interprets the general severance provision in the loan agreement to mean that, were the arbitration clause or any other clause of the contract to fail, the rest of the loan agreement would remain valid. It does not mean, however, that the arbitration clause itself will remain valid should the designation of the arbitrator fail.

Fourth, courts have weighed whether the language of an arbitration agreement makes the choice of the arbitrator or the requirement of binding arbitration predominant. For example, in *Meskill*, the Minnesota district court noted that the arbitration agreement contained a sentence in all-capital letters and bold font, stating that the parties understood that the contract contained a binding arbitration provision. 862 F. Supp. 2d at 976 ("[O]nly the fact of arbitration, not the NAF, is mentioned in this highlighted text.").

Here, too, the arbitration clause contains capitalized text:

> THE PARTIES WOULD HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE DISPUTES THROUGH A COURT BUT HAVE AGREED TO RESOLVE DISPUTES THROUGH BINDING ARBITRATION, EXCEPT THAT THE TITLE LENDER MAY CHOOSE AT TITLE LENDER'S SOLE OPTION TO SEEK COLLECTION OF PAYMENT(S) DUE IN COURT RATHER THAN THROUGH ARBITRATION. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY TITLE LENDER.

(Loan Agreement ¶ 17.) In contrast to that discussed in *Meskill*, the purpose of this text is not simply to emphasize that the parties have agreed to binding arbitration. Rather, it states that The Loan Machine has the right to *opt out* of arbitration should it prefer to pursue an action against Green in court. In addition, it requires Green to waive her constitutional right to a civil jury trial should The Loan Machine take her to court. In sum, although the arbitration clause requires

Green to bring any claims against The Loan Machine exclusively to the NAF, the highlighted portion of the clause allows The Loan Machine two options—arbitration *or* a bench trial—through which to proceed in the only type of action it would likely bring against Green, a debt-collection action. The court finds that this does little to undermine the importance of the designation of the NAF in the agreement, as the highlighted text concerns only the options available to The Loan Machine, not to Green.

Finally, the court considers whether the arbitrator was likely to have been chosen because of its unique characteristics. Here, the court finds that the NAF did have characteristics that made it unique—those that led to the consent judgment with the Minnesota Attorney General. *See Khan*, 669 F.3d at 358 (Sloviter, dissenting) (citing *Arbitration or "Arbitrary": The Misuse of Mandatory Arbitration to Collect Consumer Debts: Hearing Before the H. Domestic Policy Subcomm. of Comm. on Oversight and Gov't Reform*, 111th Cong. (July 22, 2009)). The fact that in only a handful of the thousands of arbitration proceedings conducted by the NAF was the outcome in favor of the consumer suggests that "[i]t cannot be insignificant that [The Loan Machine] named NAF as the exclusive forum in its arbitration clauses." *Id.* at 359. This supports the conclusion that The Loan Machine did not simply contract to send claims to arbitration; it contracted to send claims to the NAF.

### IV. CONCLUSION

Based on the foregoing analysis, the court concludes that the designation of the NAF as the arbitrator was an integral part of the arbitration agreement between Green and the Loan Machine. The unavailability of the NAF therefore renders the agreement void, and the court cannot apply § 5 of the FAA to appoint a substitute arbitrator. *See Carr*, 944 N.E.2d at 337. The

court denies the Loan Machine's motion to dismiss and compel arbitration, to dismiss the class claims, and to stay the case.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge